My inquiries in this case have led me to the belief that the plaintiff is entitled by law to the money in the hands of the sheriff, by virtue of the prior teste of his execution. I do not mean to give an opinion on any other facts than those stated on the record; nor particularly on the supposition that the money had been raised by a sale under the second execution.
The writ of fi. fa. in this State binds the defendant's goods from theteste of the writ, after which time any sale of them is void; because *Page 170 
from thence the goods are attendant to answer the execution. This is an old rule of the common law, founded on the reason that, as executions could issue only against goods which might if not so bound be sold by the party, he would thus be able to evade what is termed the life of the law, its effect and fruit. The common law, also, presumed that the sheriff would execute such writs immediately and thereby give such publicity to the transaction as would prevent imposition upon purchasers. The judgment did not bind, because, that being in force for a year, it would have been vexatious to restrain the debtor from his ordinary private dealings for so long a period.
When the term lien is applied to other subjects in the law its import is familiarly understood to be a binding or attachment of the thing spoken of for the benefit of him who is entitled thereto. The lien of a vendor on goods not yet delivered, of a carrier, a factor, or pawnbroker, entitles them, respectively, to a priority over others whose claims are posterior, upon the simple rule of justice that the first lien gives a right to the first satisfaction.
(311) So far from there being any reason wherefore this rule should not be applied and enforced to a certain extent between the conflicting claims of creditors under different executions, it seems to me demonstrable, from a slight view of the alteration of the law by the statute of frauds, that it is so applied and always has been.
When that statute was passed the priority arising from the teste was understood to subsist in theory in full vigor; every book that treated on executions laid it down, as settled law, and the statute itself had no further view than to restore its practical utility by the substitution of alien better fitted by its notoriety to prevent fraud and injustice to third persons.
It was not that the rule of the common law was defective in fixing on theteste of an execution to bind the defendant's goods, because in reality the law supposed the execution to be delivered to the sheriff immediately from the teste; and if, in point of fact, that had been done, the purposes of the statute would have been accomplished and its enactment rendered useless. Thus the award of an execution and the teste of an execution are convertible terms; but the former is chiefly used in cases before the statute. A bona fide sale of chattels is good after judgment, but not after execution awarded. 8th Co., 170. "By the award of execution the goods are bound, so that they may be taken in execution, into whose hands so ever they come." Cro. Eliz., 174.
But the real mischief intended to be remedied was that creditors took out executions, one under the other, without delivering them to *Page 171 
the sheriff, whence the retrospect of the teste made sales uncertain, each plaintiff being entitled according to his relative priority; and it was utterly impossible for purchasers and strangers to tell without an inspection of the record, a process neither cheap nor easy, to what extent the goods were bound.
So far as other persons were concerned, who might have a title to the goods between the teste and delivery, the statute designed to restore the old law; but as to the party himself, his executors (312) and administrators, the goods, since the statute as before, are bound from the teste. 2 Show, 485.
If this position be correct I would infer from it this corrollary, that the cases since the statute of frauds, showing the force and extent of thelien created by the delivery of the writ of fi. fa., will go very far towards explaining and proving the extent and operation of the lien arising from the teste before the statute. A more direct mode of showing the question would be to adduce cases which occurred before the statute, but none such directly in point are to be found. There are, however, dicta and decisions of modern judges, relative to the common law on this point which, if correctly reported, are entitled to much consideration. Lord Mansfield
decided that, though the sheriff had seized under one writ first, he was bound to sell under another delivered afterwards, if it had a prior teste. Cited in 4 East, 534, in notis. To the same effect is the opinion of the late Chief Baron MacDonald, who, having presided many years in the Court of Exchequer, may be supposed, was well instructed on the subject. His words are, "I take it, before the statute of frauds a writ of execution of a prior teste would have been preferred to a writ of execution of a subsequent teste, although the latter was first delivered to the sheriff and was begun to be executed, provided that the writ of prior teste came to the sheriff's hands before sale." Cited in 16 East, 279, in notis. If these opinions of these eminent men are to be relied on as authentic, they go to the whole length of the present controversy. They will be found, too, in accordance with the decisions since the statute.
Hutchinson v. Johnson, 1 Term, 729, shows that where two writs of fi. fa. against the same defendant are delivered to the sheriff on different days, and no sale is actually made of the defendant's goods, the first execution shall have the priority, even though the (313) seizure was first made under the subsequent execution. I would remark on this case that the statute priority by delivery is preserved, notwithstanding a seizure under a second delivery. Can any reason be assigned why the common-law priority shall not be maintained, *Page 172 
notwithstanding a seizure under a subsequent teste, provided the first execution reaches the sheriff before the last is actually executed? If there cannot, then the case before us is decided by this authority. The case of Smallcombe v. Buckingham was a sale by the sheriff under a second writ of fi. fa., the former fi. fa., though first delivered to the sheriff, not having been then executed. According to the report of it by Comyns, the amount of the judgment was that, at common law, if there were two writs of fi. fa., the one bearing teste on such a day and the other on the next day, and the last writ was first executed, such execution should not be avoided, and the plaintiff in the first execution must seek his remedy against the sheriff; for the sheriff ought to make execution at his peril, and if there was no default in him he shall be excused; as, if he who took the first writ out conceals it in his pocket, the sheriff may rightly make execution on another writ which bears the lastteste but comes first to his hands. The law laid down in the case affirms every principle on which the plaintiff relies in the case before us, though it goes further and validates a sale made under the second execution, a question with which we have now no concern. Rybot v. Peckham, cited in Term, 729, is decided on the same principle, and while it admits the validity of a sale under the second execution, it shows at the same time that the sheriff makes himself liable to the plaintiff in the first, which could not be but for the priority of the latter. The courts have evidently gone far to support sales actually made under execution; and it is probably right, and according to the general policy of the laws, that innocent (314) vendees should not be disturbed by dormant liens, more especially as the plaintiff may obtain satisfaction from the sheriff; but, though it may be execution executed may destroy the lien of the first, though it may be waived or lost by laches or fraud or overreached by relation of a bankruptcy or extent, yet nothing of the kind appears in this case. I am, therefore, of opinion that judgment shall be entered for the plaintiff.